And the next case for argument is 13-1679 World Class Technology Corporation v. Ormco. Will everybody get settled? Good morning, Chief Judge Frost, Judge Serrano, Judge Hughes. With me at council table is Chris Mead and Greg Ahrens, who were involved in the case below. This case actually presents a fairly simple, straightforward issue of claim construction. This court has wrestled with times, but developed a fairly substantial body of law in the nine years that it has been applying the Phillips case. And what has emerged from that is a fairly clear rule. And that is that you apply the common, ordinary meaning of the claim terms and you deviate from it only when there is lexicography or a disavowal or disclaimer. Moreover, that lexicography or disavowal must be clear. Can we get to the specifics here? Yes, Your Honor. In many cases, at least for me, this one doesn't move on general principles. It moves on the specifics of the record. So what is it? Let me ask you this first of all about the plain language. Two things have struck me about it, and I'd like you to talk to me about whether they have any significance. One is, doesn't the phrase support structure itself leave just a little bit of residual uncertainty about when the support has to occur during the movement or only when the thing is closed? And second, the patentees chose to use two different terms, support surface and ledge. Why would they choose to do that if, what I take it is your view, it doesn't matter for claim one that the slide is coming up or going down along the support surface or ending up at the support surface? Yes, Your Honor, that is correct. That is our view. That the specification specifically expressly states you can flip it, and that's all that was done here. And I can point to those statements in a moment. But getting to your point on ledge and support surface, support surface standing alone doesn't require a lot of structure. Yes, that's absolutely true. But what it does require is articulated in further limitations in this claim. What it is saying is that, in this broadest claim, it does allow you to flip it either way. It doesn't specify which... I understand that there are pieces of the analysis, the claim language, prosecution history, the specification, claim differentiation. Claim differentiation undisputedly helps you. 6 and 16 say that the support surface has to serve for translation, moving along. Put that aside. I do want to ask you about the prosecution history as well. Just on the language, which is where we traditionally start. Why isn't there enough uncertainty about when the support has to occur, during motion or only in the closed position, to force us to look at other things like the specification to tell us what were the inventors really up to here? If all the claims said was support surface, I might agree with that. But that's not all the claim says. It specifically tells you when the support surface must be engaged. In the last clause, the where-in clause of Claim 1, it says the slide, the movable member of the slide, has a first portion and a second portion. And what it gives you is an additional limitation that the first portion is engaged with the support surface in the closed position. That is the only limitation in this claim on when the support surface has to be in contact with the slide. It doesn't have any of the requirements that the district court added that it has to define the slide engagement track. There are other elements that are part of that. And it also doesn't have any other limitation that it has to be in contact when it's open and remain in contact while it's sliding. Talk to me about the choice of two different terms, support surface and ledge, for the two surfaces that come to the edges of the slide. I think, Your Honor, again, I'm picking this up at the appellate level. I think the difference is that the support surface supports the slide when it's in the closed position. The ledge is basically providing a couple of different functions. In various of the embodiments, it protrudes out and gives the dentist or the orthodontist a way to grip it. Secondly, it kind of gives you a little lip that prevents food and other impacts from dislodging the slide. I don't think there's any magic to it. I think they just chose a different term to talk about that second part, the ledge. Again, it also is required to… So you agree that support surface and ledge mean different things? I agree that the support surface and ledge are different structures, yes. But they're not further limited in the way the district court limited them. The support surface merely needs to support the slide in one position. So if you take a device that has a support surface here and a ledge on top and you flip it over, why shouldn't the support surface still be the same piece and the ledge still be the same piece? Well, Your Honor, it can and it can also be inverted. There's no limitation that requires the support surface to be on a particular side of the archwire slot or that the ledge be on a particular side of the archwire slot in the broadest claim. There are other claims. There are other embodiments in which that is the case where there are further limitations, but those are not included in this broadest claim. The error that we contend the district court occurred, first off, by looking at any support surface and saying that means a single structure. That alone is error, and we've pointed that out in the brief. If you look at the specification, column four begins, and I'm not pointing to the mere boilerplate that these are illustrative only. Those statements are in here as well, but there are specific broadening statements at column four starting at line 35 to about line 53 that talk about changing the orientation, flipping it, as Appellees and Appellants have both characterized it. There are... Well, flipping it, the it... The bracket. ...matters. The whole bracket, I don't think flipping that helps you. What you need is keeping the bracket the same but flipping the slide. Okay, and that's where, if you get down to column five, I will say there is not a drawing that shows their configuration. No, no, no, I understand. I understand what's missing. But there are broadening statements at column five. What the district court did is said the support surface is the slide engagement track. That's not quite true. At column five, and this is language we've both cited to you in our briefs, the last sentence beginning at around line 60, that the planar support surface, including the grooves and guides, collectively define a slide engagement track. Then if you continue on to the next column, column six, there's a discussion about an alternative in which the slide can engage those grooves. If the slide is engaging the grooves, it can but need not also be engaging the support surface. If that's at line 25 to 30, there's a discussion of that. Then on column seven, it talks about you're trying to maintain the slide so that it has a close fit. It doesn't wobble around. That close fit, again, they emphasize at column seven at line 14 and 15 that the slide can be held by the grooves. One of ordinary skill would understand if it's a close fit and the slide's being held by the grooves, it could be in contact with the support surface, yes, but it need not be. Can I ask you, what does the record, particularly the specification, indicate about what purpose the support surface angle, the acute angle made between the support surface and the base, like this, what is the function of that apart from the function it plainly serves when the slide is coming up, which is keeping the slide out of the way of the guide? If the bracket is oriented so that it loads from the gum side, it keeps it away. If it's loading from the other side, it's not a problem, which is one of the embodiments. What other purpose does the insistence of this on having that acute angle work? If you load the slide in and it's all on the same plane, the support on the opening side, we'll call it the opening side and the closing side, if you load it in straight and it's all in one plane, when the slide comes in, there's no tension on the slide, there's no pressure on it to stay engaged. By having a different angle on the opposite sides of the archwire slot, when that slide is engaged, I'm now putting force on the slide in different directions on the two ends, and that alone helps the slide stay engaged in the grooves and in the slide engagement track. What you just said, is that reflected in the specification? Your Honor, I think it's reflected in the specification through the drawings. There is not an explicit statement of what I just said in the text. A discussion of the forces. A discussion of the forces. I think it's implicit in the drawings, and one of our jurists would look at the drawings and see that that's how it's going to be oriented, but there's not an express articulation in words. Can I just ask you about what's just mysterious to me? A piece of the prosecution history, not in the record, but in the public record, is the examiner interview summary statement, in which the record says, the examiner indicated that claims would most likely be allowable over the prior art if limitations were included in the claims that stated that the ligating member of the slide was moved linearly and that the first portion of the slide remained in contact with the support service during the entire movement of the slide from the open position to the closed position. That sounds like exactly what the district court has adopted as an interpretation. And the next sentence says, a little bit like Bartleby, the attorney informed the examiner that the applicant did not wish to amend the claims in the manner proposed. And you didn't. And we did not. It was allowed. What am I missing about why this is not strongly supportive of your position? Your Honor, I think it is strongly supportive of our position, but it hasn't been presented to us. So what am I to make of that? Well, Your Honor, not all of the file wrapper was put in the record below by either party. So, yes, I think it does strongly support our position. The examiner wanted us to limit it more. We said no, and he allowed the claims anyway, without the express limitation they're trying to add. Yes, I agree. But, Your Honor, my biggest concern is that, look, I understand that we have to have broadening disclosure at a base. I mean, if we don't have a disclosure that supports the broader scope of the claim, you could look at that and simply say, well, he was wrong. I do believe it firmly supports us, but I also believe there is broadening disclosure in this specification that doesn't give a clear intent to limit the claims, that doesn't do any of the things that this Court has held in the hundreds of Phillips cases it's come down with in the meantime. There isn't a statement that this is critical, that it's important, that it's the only way that it works. There's no statement in here that criticizes the alternative that we're asserting is covered, that gives it away. There's nothing in the prosecution history that goes in the opposite direction of what you've just read. We think everything in the prosecution history supports what we're saying about this. So what you've got is a situation where if we affirm on this case, we are backsliding into territory where it doesn't have to be clear expressed intent. It doesn't have to be clear and unmistakable anymore. It can be equivocal. It can be ambiguous. It can be contradicted by explicit statements in the specification and the explicit statements in the prosecution history. All of that is premised on where you started, which is the view that the claim language ordinarily understood is really quite clear that it doesn't matter whether the slide is in any way touching the support service during the movement. In the open position. And if that is, I might think, even a little bit unclear, then suddenly what the specification shows the inventors contemplated comes pouring in to re-answer that uncertainty. And even if we accept that, and we're not going to go on common ordinary, meaning we now need to look at the specification. I point the court to column six, lines 27 to 31, where there's an explicit statement that these are the mesial and distal portions of the slide, include slide rails 70 and 72, extending in the occlusal gingival direction and adapted to engage the slide grooves 48 and 50 of bracket body when ligating slide is engaged with bracket body. Now, if that statement had said engage the support surface when it would be, sure, I'd have more of a problem. But this is pointing in the other direction. Does something tell us whether the word engage means something other than support or touch? I think it's just used in the patent throughout as just touching, that there's contact between those parts. It doesn't mean some kind of locking? No, I don't think it is. There is other disclosure in here talking about the locking and the retaining. There's two separate functions. So I think the patentee was using those terms when it meant that. I think what it means by engaging is just in contact. So what we have here is a teaching that the contact can be with the grooves. We go to the top of 7. There's a long discussion of this close fit, because I don't want this thing wobbling around and I don't want it sliding out accidentally. So I'm maintaining the close fit. And again, at lines 14 and 15 of column 7, the applicant emphasizes that the first person engages the slide grooves of the slide engagement track. Again, he's not saying it stays in place, because it's in contact with the support surface. He's saying it stays in place in these embodiments, because it's in contact with the grooves. It could also be in contact with the support surface. We're not limiting that, but it's not necessary. And therefore, that limitation was not clearly indicated by this record. Quite the contrary. The record points the other way. We have a broader disclosure. Your Honor, I'm sorry. I've used up all of my rebuttal time. A couple minutes left here for me to decide. Okay. Thank you. Mr. Bergen. Good morning. May I please report? I'm Brian Bergen on behalf of World Class Technologies. I think I'd like to start where Mr. Coyne left off, and that is the point about the slide engagement track and the planar support surface and what makes up that here. Column 5, line 61, says the planar support surface, 46, including grooves 48, 50, and guides 52, 54, collectively define a slide engagement track for supporting and guiding ligating slide within the bracket. And I think what they have done is they've read out the word collectively. And I think collectively is an important point here. The slide engagement track is not simply the grooves and slides, as they have argued. It's the grooves, slides, and the planar support. And the planar support is defined in the specification in multiple places. If you look at figure 1, figure 3, figure 4A, and figure 4B, they all have the planar support. They have both the planar support surface and the base surface. And it's consistent throughout the specification. In fact, the specification makes reference several times. Like reference numerals refer to like features. Well, again, the planar support surface, reference number 46, and the base surface, reference number 40, appear in multiple drawings and they all show the same thing. So while I agree with ORMCO that there are multiple embodiments in the patent, I don't think that it helps them because the multiple embodiments all define the same planar support surface and the same base surface. Can I ask you about this question? What function does the acute angle, the main acute angle, the one between the base and the support surface, not the one about the bent nature of the slide itself,  other than a function it would serve if the slide were translating, that is moving along the support surface to stay out of the gum? Mr. Coyne referred to a function having to do with the relevant direction of forces from having that angle. Can you comment on that? Yes, Your Honor. I think that the only function that it serves is to put, to keep the slide from engaging the gums when the slide moves from the open to closed position. And in fact, in ORMCO's opening brief, they're distinguishing over the Damon bracket, which is another patent that they own on a different bracket. And what they say is, and this is on page 11 of their brief, OTA's invention resolves these issues, first by positioning the slide so that it is inserted gingerly. The slide does not interfere with the gums. And second, and then they talk about, you don't want inadvertent opening. But the argument that they made, and I was surprised to see it for the first time in their reply brief, is about forces and stresses, because the patent never mentions stresses. And if you read the section... Isn't there some reference? I'm not aware if that's a reference in the specification, but that could just be me. I think I'm remembering references in the prosecution history, the portion that's actually in the joint appendix, in which I thought the examiner, ultimately concluding that Damon wasn't a problem, talked about the torquing forces from the angle. This is, I guess, at A1020. Damon is silent regarding the support surface being acutely angled with respect to the base surface. Does disclosing angle of base surfaces being a result-effective variable influencing the different torquing being subject to the tooth? Let me just give the context. The reason I guess I'm focusing on this is that it seems to me if keeping the slide away from the gum was the only function served by having this acute angle, which is obviously absolutely central to what's going on here, then that would tend to suggest the claim refers only to the situation where the slide is coming up along the support surface, along the angle. It's completely irrelevant that the slide is coming down along the ledge. But if there's an additional function served by that angle, then it might make sense to have an independent claim that doesn't serve the stay away from the gum function. And so I'm trying to understand, is there an additional function? And I think if I'm reading A1020 right, this is the examiner's comment concerning it. And I don't believe that it's addressed in the amendment after the final rejection. What do you... I'm sorry. I was just going to ask on your behalf what you make of the prosecution history that Judge Taranto cited to you. I would have to... Can you read that back to me? During a recent conversation, the examiner had explained that the claims remain too broad to overcome various prior art references. He indicated that the claims would most likely be allowable over the prior art if limitations were included and the claims have stated that the ligating member... You agree that's the slide, right? That's the slide. Was moved linearly and that the first... Just don't... It's not going to go around like this. It actually has to move in a line. And that the first portion of the ligating member remained in contact with the support surface during the entire movement of the ligating member from the open position to the closed position. The attorney informed the examiner that the applicants did not wish to amend the claims in the manner proposed by the examiner and that an office action should be mailed in response to the most recently filed claims. And then they amended some things, but not this. They did some stuff about ledge, but not this. So here, I take this... I'm seeing... I'm having a hard time understanding this to say anything other than the examiner thought that they should add limitations to do exactly what you proposed and the applicant said, no, thank you. And didn't do it, and then it was... The claims were left. I think that my response there is that when the examiner at the patent office is looking at the claims, he is giving those claims the broadest possible view. And so he's broadly interpreting those claims, not necessarily interpreting the claims in light of the specification as the court would do. And so if you look at the specification, then I think that's the response, is that the specification more narrowly defines the claim than does the examiner during prosecution. And in fact, if you look at the specification, and this is all in our brief, but the specification defines the translation plane as the plane along which the ligating slide moves between the open and closed positions. And it's defined by the slide engagement track, and as I stated earlier, the slide engagement track is defined collectively by the planar support surface, including the grooves and including the guides. And as I argued earlier, that they're trying to read the collectively out of it, and I think that's what the examiner does as well. I think I'd like to back up now and look at how you interpret claim terms. And as I understand their argument, it's much like the argument that's been rejected several times by the court, and that is the plain ordinary meaning of support and surface, if you take those together, then any surface that supports is a support surface. I think you have to look at support surface in the context of the patent, and it has to be looked at by one of ordinary skill in the art. And there's simply no evidence in the record that one of ordinary skill in the art would think that support surface would be given the broad interpretation. In fact, this is supported, I think, by several of the cases that we cited. Can you address claims 6 and 16, which, at least as I read them, and tell me if I'm wrong even about this, make perfectly clear that they are adding a limitation that the support surface is, in fact, to be used for translation. By translation, right? I mean, that's the movement of the slide. Why do they, does that addition, 6 for 1 and 16 for 10, not communicate pretty clearly that the independent claim is broader? Well, in claim 6, and this is obviously their claim differentiation argument, claim differentiation is not a hard and fast rule. And in this case, if you look at claim 6, it adds two limitations. The point of claim differentiation is to avoid having a redundant claim. And here, it's not redundant because claim 6 actually adds two limitations rather than just a single limitation. Suppose its significance could be more than purely avoiding redundancy. Why isn't it significant as an informative matter that the use of the support surface as a translation claim, to define it, comes in only at 6? Again, it comes in throughout the entire specification. In fact, there's no place in the specification that broadly defines the term support surface. And so, claim 6, and again, I'll come back to my argument, in claim 6, there are two limitations that are added. And if the point is to avoid redundant claims, then the fact that claim 6 added two limitations rather than a single limitation should get us past that issue. Yes, I'd like to... I don't need to talk much about our prosecution history argument. I think it's clear in the briefs. The one thing I would say about our prosecution history argument is that all of the evidence that was necessary to determine the prosecution history issues here in interpreting the claims is in the record. And in fact, some of it was cited by ORMCO in their opening brief. They cited page A651, which, actually, they quoted it, which is part of the amendment after final rejection. So that evidence is all in the record. We haven't talked about the word ledge. I think the word ledge is a fairly easy claim term because once you've said what the support surface is, the ledge necessarily follows from that. It's on the opposite side of the slot. So, in essence, the term ledge will be determined by the meaning of support surface. I did want to talk a little bit about the application of the claims to the accused H4 device. And again, the support surface identified by Dr. Tugud is on the opposite side from the ligating slide in the open position. As a consequence, the support surface that Dr. Tugud identifies is not a part of the slide engagement track. And again, I come back... Can you just clarify for me, why are we talking about the accused products here? I thought there's an agreement that, in fact, a stipulation, paragraph 7 of the stipulation, that says if support surface has the construction the district court has, there is no infringement. Don't need to talk about ledge. There's no issue about how it applies. It's a pure claim construction issue. Why are we talking about... Well, there's a preliminary injunction motion that was denied by the court based on the claim construction. And so this was all in evidence. And in fact, it's cited in three pages of their opening brief. I know what's in evidence, but the blue brief presents a pure claim construction issue. So maybe I'm just confused about why what's in the accused products matters here. I was just trying to show the breadth of their claim construction and how it doesn't use... Then you've read collectively out. One last point that I'd like to address, and that is the point of a and the and the district court erring because it used support surface. It said there were multiple support surfaces. That was in the preliminary injunction motion, not in the Markman hearing, or not in the Markman ruling. If you read through the Markman ruling, that issue's not presented. In conclusion, world-class technologies respectfully request that the court affirm the district court. Thank you. Thank you, Your Honor. Your Honor, very briefly. First off, the collectively defined means what it says. It's not us who's trying to read out collectively. They're trying to equate the single support surface, which is one of those collective elements, with the whole thing. We agree. It is collective, and the guides and groups are part of it. Secondly, I'd like to direct the court to column 10, line 37, apropos one of Judge Hughes's questions and one of Judge Toronto's questions in light of what my opponent said. At column 10... I'm sorry. Can you give me that slide again? Column 10, line 37, it does define the ledge. And realistically, they're just using this word to refer to the opposing... This is the claim? This is the claim. At line 37, it says, the ledge opposing the support surface across the archwire slot. So what it's really simply doing is defining that one piece is on one side, the other piece is on the other side. It's not telling us in claim one which side it has to be on. They're just the opposing parts. The significance of that really gets back to... That would seem to make more sense if it's set up using two terms that seem to be completely different. You would have used surface one and surface two. Your Honor, if we had the ability to rewrite the claim right now, I would completely agree with you, but I don't. So that's the terms that they did use. Well, I understand that, but that's what's causing me a little bit of problems here in that I don't... I mean, I have a very hard time understanding how in the context of this invention, support surface and ledge have plain meanings. And so then I look to how they're defined. And when you use two different terms, it doesn't seem like they should be used interchangeably. They should be used to describe the same structure. And at least it seems to me once you start looking at the accused devices, you're flipping the way you're using those terms. Maybe I can give it the context to answer your question. If you'd look at page 10 of our brief, we reproduce figure four out of the Damon reference that was cited, which is the basis for this exchange in the prosecution history. What we were trying to distinguish this bracket. And we did that by adding a ledge, which keeps the food from coming in, keeps impacts from hitting the slide and by this angled surface. So that in the Damon bracket, if you see on page 10, as the slide is going in, it simply goes in and there's a butt joint. It simply hits this surface 37 and stops. So what we've added is the limitations of these acute angles and that the ledge is on the opposite side from the support surface. And that was sufficient to distinguish not the factors the examiner suggested we add. I see that my time has expired. I'm happy to answer any further questions, but thank you, Your Honor. We thank both counsel. The case is submitted.